IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:22-cv-02943-MEH

PARKER EGBERT, an individual

                    Plaintiff,

v.

ROBERT GRISWOLD,
UNITED STATES OLYMPIC & PARALYMPIC COMMITTEE, a not-for-profit corporation,
and DOES 1 through 50, inclusive, whose true names are unknown,

                    Defendants.

---

**UNITED STATES OLYMPIC & PARALYMPIC COMMITTEE'S
PARTIAL MOTION TO DISMISS PLAINTIFF'S CORRECTED FIRST AMENDED
COMPLAINT AND TO STRIKE**

---

Defendant United States Olympic & Paralympic Committee ("USOPC") through

undersigned counsel, submits this Partial Motion to Dismiss ("Motion") Plaintiff's Corrected First

Amended Complaint ("First Amended Complaint" or "FAC") [ECF No. 58], pursuant to Fed. R.

Civ. P. 12(b)(6), 12(f), and 9(b),[1] stating:

## INTRODUCTION

In his First Amended Complaint, Plaintiff Parker Egbert ("Egbert" or "Plaintiff") brings

new claims and allegations against Robert Griswold ("Griswold") and USOPC in connection with

allegations that Griswold physically, verbally, and sexually abused him during the Tokyo

Paralympic Games and at the Olympic and Paralympic Training Center ("OPTC"). While Plaintiff

---

[1] On April 5, 2023, the Court granted Plaintiff's Motion for Leave to Amend his Complaint and
found USOPC's initial Partial Motion to Dismiss moot as a result.

brings eleven total tort claims against USOPC, this Motion addresses seven of those claims: negligence; negligent supervision, training, retention, and entrustment; negligent failure to warn; gross negligence; fraud and misrepresentation; fraudulent concealment; and civil conspiracy. The Court should dismiss those claims as a matter of law.[2]

Plaintiff's entire case revolves around alleged acts or omissions that occurred either in Tokyo during the 2020 Paralympic Games,[3] or at the OPTC in Colorado Springs. The crux of Plaintiff's First Amended Complaint is the addition of a premises liability claim against USOPC pursuant to the Colorado Premises Liability Act ("CPLA"), C.R.S. § 13-21-115(2). FAC ¶¶ 185-198. However, by adding this claim, Plaintiff has rendered his negligence claims defective as a matter of law. The CPLA abrogated and preempted the common law as to landlord or landowner liability, with the express purpose of limiting such liability to claims set forth in the statute. Consequently, Plaintiff cannot bring negligence claims against USOPC to the extent they are premised on USOPC's alleged failure to exercise reasonable care to protect against dangers on its premises, or on premises upon which it exercised control, of which it knew or should have known.

To the extent Plaintiff intends to rely on the Ted Stevens Olympic and Amateur Sports Act ("Amateur Sports Act"), 36 U.S.C. § 220501 *et seq.*, and the Protecting Young Victims from Sexual Abuse and Safe Sport Authorization Act of 2017 ("Safe Sport Act"), PL 115-126, 132 Stat 318 (Feb. 14, 2018) to support his negligence claims, FAC ¶¶ 23-25, neither the Amateur Sports

---

[2] USOPC has submitted an Answer contemporaneously with this Motion that responds to the factual allegations and remaining claims brought against it.
[3] For clarity, due to the COVID-19 pandemic, the 2020 Tokyo Paralympic Games actually took place in 2021.

5153749.1

Act nor the Safe Sport Act create a private right of action for Plaintiff to bring his negligence claims against USOPC.

In addition to being barred by the CPLA, Plaintiff's negligent failure to warn claim also does not apply to the facts of this case. Negligent failure to warn claims are supported by allegations that the defendant was either the manufacturer or seller of a product or the owner of property, who failed to warn the plaintiff of a dangerous or hazardous condition related to the product or property. Clearly the latter circumstance would again be preempted by the CPLA.  As USOPC is neither a manufacturer nor seller of a product, this claim fails as a matter of law.

Fraudulent misrepresentation and fraudulent concealment must be pled with particularity under Rule 9(b). Plaintiff's First Amended Complaint fails to provide, for each of USOPC's allegedly fraudulent activities, enough details to give USOPC sufficient notice to meaningfully answer and defend itself. In addition, Plaintiff fails to set forth a factual basis to support its allegations made on information and belief. Additional allegations in Plaintiff's First Amended Complaint fail to cure these pleading errors, warranting dismissal. *Hermann Holdings Ltd. v. Lucent Technologies, Inc.* 302 F.3d 552, 567 (5th Cir. 2002).

Finally, Plaintiff's Complaint fails to plausibly allege sufficient facts to satisfy the "meeting of the minds" element of a civil conspiracy claim. Plaintiff alleges, with insufficient factual support, that USOPC and the U.S. Center for SafeSport ("SafeSport") agreed to conceal allegations against Griswold from Plaintiff and/or other athletes. But USOPC is statutorily barred from participating in, interfering with, or publicizing SafeSport's investigative process or findings, and therefore could not legally take the actions Plaintiff alleges it should have taken. Further, conclusory allegations of agreement between USOPC and SafeSport at some unidentified point,

or suggestions that seemingly parallel conduct that necessarily implies a conspiracy, are insufficient to plausibly allege that USOPC and SafeSport conspired to engage in wrongful conduct. Because the First Amended Complaint fails to cure the pleading deficiencies in his original Complaint with respect to this claim, it must also be dismissed.

## <u>LEGAL STANDARD</u>

Under Rule 12(b)(6), courts "apply a plausibility standard to ascertain whether the complaint includes enough facts that, if assumed to be true, state a claim to relief that is plausible on its face. We accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the nonmoving party, here the plaintiff." *Mink v. Knox*, 613 F.3d 995, 1000 (10th Cir. 2010) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" need not be credited and "do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is plausible when "the well-pleaded facts…permit the court to infer more than the mere possibility of misconduct." *Id.* at 679. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

Under Rule 12(f), "[t]he court may strike from a pleading…any redundant, immaterial, or scandalous matter…on motion made by a party either before responding to the pleading…." The court has discretion to grant motions to strike where pleadings have "no possible bearing on the controversy and where the moving party makes a showing of prejudice. *C.M. v. Burns*, 2014 WL 1056414 at *4 (D. Colo. Mar. 19, 2014) (*citing Sierra Club v. Tri-State Generation &*

*Transmission Ass'n, Inc.*, 173 F.R.D. 275, 285 (D. Colo. 1997)). An allegation is immaterial if it "has no essential or important relationship to the claim for relief or the defenses being pleaded," and "[a] pleading is impertinent if it consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.* (*citing Rawson v. Sears Roebuck and Co.*, 585 F.Supp. 1393, 1397 (D. Colo. 1984)).

"A party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). As an exception to Rule 8's requirement that pleadings should be simple, concise, and direct, Rule 9 is read restrictively rather than expansively, requiring a plaintiff to "provide enough notice to each defendant of the misrepresentations the defendant made so that he can answer and otherwise defend himself." *Gardner v. Investors Diversified Capital, Inc.*, 805 F.Supp. 874, 876 (D. Colo. 1992).

Where a plaintiff is given multiple opportunities to plead his claims but fails to cure prior pleading defects, dismissal of those claims is warranted. *Dahn v. U.S.*, 127 F.3d 1249, 1251 (10th Cir. 1997) (district court properly dismissed claims following plaintiff's attempted amendment, where the proffered amendment was still insufficient); *Hermann Holdings Ltd.*, 302 F.3d at 567 (district court properly denied leave to amend and dismissed claims where plaintiffs filed a complaint and two amendments, and were thus given "ample opportunity" to plead their claims); *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986) ("At some point a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit.").

5153749.1

## ARGUMENT

A.   **Third, Fourth, Fifth, and Sixth Claims for Relief: Negligence; Negligent Supervision, Training, Retention, and Entrustment; Negligent Failure to Warn; and Gross Negligence.**

   1.   *To the Extent Plaintiff's Negligence Claims are Premised on USOPC's Alleged Failure to Protect Against Known Dangers on Premises it Purportedly Owned or Controlled, they are Barred by the CPLA.*

To the extent Plaintiff seeks to allege that Egbert suffered injuries by reason of a condition or activities conducted at premises owned or controlled by USOPC, his common law negligence claims are barred under the CPLA. In the First Amended Complaint, Plaintiff alleges that, although USOPC did not own the premises where Plaintiff and Griswold roomed in Tokyo, it "controlled and conducted activity on the premises." FAC at ¶ 186. Plaintiff further states that "USOPC expressly invited him to enter [the Tokyo facilities] and remain on the premises to live in the athlete dormitory USOPC controlled while he participated in the Tokyo Games for the mutual benefit of both Plaintiff and USOPC," and he was "given USOPC's permission and consent to use the facilities and reside in the athlete dormitory USOPC controlled for the purpose of training and preparing for competition." *Id.* at ¶ 187. Plaintiff also alleges that "USOPC was the owner of the OPTC in Colorado Springs, where much of the verbal, physical, and sexual abuse described herein occurred." *Id.* at ¶ 189. Similarly, Plaintiff's Motion for Leave to Amend his Complaint [ECF No. 48] ("Motion for Leave") states "Plaintiff was first injured in Tokyo while on premises controlled by USOPC and his injuries continued while he resided in Colorado Springs on property apparently owned by USOPC." Mot. for Leave at 7. Setting aside factual disputes regarding whether USOPC owned, controlled, or operated the facilities in question in the manner described, these allegations,

6

taken as true for the purpose of this Motion, are intended to trigger liability under the CPLA. As such, the allegations also bar Plaintiff from seeking relief under any other theory of negligence.

"In *any* civil action brought against a landowner by a person who alleges injury occurring while on the real property of another and by reason of the condition of such property, or activities or circumstances existing on such property, the landowner shall be liable *only* as provided in subsection (3) of this section." C.R.S. § 13-21-115(2) (emphasis added). This statute is the "*comprehensive and exclusive* specification of the duties landowners owe to those injured on their property." *Vigil v. Franklin*, 103 P.3d 322, 328 (Colo. 2004) (emphasis added); *see also Stanton v. Richards*, 2011 WL 3791972 (Colo. Dist. Ct. May 6, 2011); *Lombard v. Colo. Outdoor Educ. Center, Inc.*, 187 P.3d 565, 574 (Colo. 2008).

The CPLA bars, not only Plaintiff's negligence claim, but also his negligent supervision, training, retention, and entrustment; negligent failure to warn; and gross negligence claims, insofar as they arise out of activities conducted or circumstances existing on property allegedly owned or controlled by USOPC. *See Casey v. Christie Lodge Owners Assoc., Inc.*, 923 P.2d 365, 368 (Colo. App. 1996) ("[R]egardless of the fact that plaintiff's proposed amendment was described as a claim for 'negligent supervision' or 'negligent retention,' because her contentions related to the condition of the property, or activities conducted or circumstances existing on the property, plaintiff would still have been required to prove that [defendant] failed to exercise reasonable care to protect against dangers of which it actually knew or should have known."); *see also Rieger v. Wat Buddhawararam of Denver, Inc.*, 338 P.3d 404, 412 (Colo. App. 2013) ("Colorado case law has consistently recognized and acknowledged that the CPLA abrogated and preempted the common law as to landlord liability with the purpose of limiting such liability to the claims expressly set

forth in the statute."); *Walters v. S & F Holdings*, 2015 WL 4692596 at *5 (D. Colo. July 13, 2015), *adopted in relevant part*, 2015 WL 4653147 at *2 (D. Colo. Aug. 6, 2015) (Dismissing all of plaintiff's negligence claims, including gross negligence, because "all negligence claims fail as a matter of law because the PLA is the exclusive remedy.").

While the CPLA does not foreclose a plaintiff from bringing a premises liability claim along with other theories of recovery, the statute ***does*** expressly bar a plaintiff from bringing common law negligence claims to recover for injuries arising out of activities conducted or circumstances existing on property the defendant allegedly owned or controlled, as a result of the defendant's alleged failure to exercise reasonable care to protect against dangers of which defendant knew or should have known. *Casey*, 923 P.2d at 368. Because "the General Assembly indicated its intent to ***completely occupy the field and supersede the existing law*** in the area… it would be entirely inconsistent with the plain language of the statute and the holdings of [the Colorado Supreme Court] to bypass the statute and allow for the imposition of liability based on any other theory of negligence." *Lombard*, 187 P.3d at 574 (internal citations omitted). Plaintiff's negligence claims are preempted by the CPLA and must be dismissed.

### 2. *To the Extent Plaintiff's Negligence Claims are Premised on the Amateur Sports Act or the SafeSport Act, They Fail Because the Statutes Do Not Create a Private Right of Action Against USOPC.*

Plaintiff purports to bring his negligence claims against USOPC pursuant to the Amateur Sports Act and the Safe Sport Act. FAC at ¶¶ 23-25, 36, 68-69, 71-72, 141-42, 151, 154-55, 166, 168-69, 175, 177-78, 184, & 203. Neither law creates a private right of action against USOPC.

5153749.1

The Amateur Sports Act itself does not furnish a private right of action. 36 U.S.C. § 220505(b)(9) ("neither this paragraph nor any other provision of this chapter shall create a private right of action under this chapter"); *see also Oldfield v. Athletic Congress*, 779 F.2d 505, 506-07 (9th Cir. 1985) (Athlete whose amateur status was suspended lacked a private right of action under the Amateur Sports Act to challenge his disqualification, because the statute does not expressly provide for such relief.); *Michels v. U.S. Olympic Committee*, 741 F.2d 155, 157 (7th Cir. 1984) (The Amateur Sports Act contains no express private right of action for athlete to challenge suspension, and legislative history reveals that Congress intended not to create a private right of action under the statute after striking such relief from the original proposal.).

As to the Safe Sport Act, Plaintiff fails to point to a specific statutory subsection that creates a private right of action against USOPC. "Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress. Absent a statutory intent to create a private right of action, courts may not create one, no matter how desirable that may be as a policy matter, or how compatible with the statute." *USA Tax Law Center, Inc. v. Office Warehouse Wholesale, LLC*, 10 P.3d 428, 430 (Colo. App. 2007) (internal citations omitted).

Because neither the Amateur Sports Act nor the SafeSport Act create a private right of action, they cannot form the basis of Plaintiff's claims. Allegations referring to those statutes are therefore immaterial to the resolution of claims and defenses in this case and should be stricken. These statutory references have no relationship to the claims for relief being pleaded, and do not pertain and are not necessary to the issues in question. *C.M.*, 2014 WL 1056414 at *4; *Sierra Club* 173 F.R.D. at 285; *Rawson*, 585 F.Supp. at 1397. To allow Plaintiff to support his claims using statutes that do not create a private right of action would be prejudicial to USOPC—presenting

5153749.1

these statutes to a jury would assuredly confuse the jury into believing that Plaintiff is entitled to relief for his claims based on the statutes. Accordingly, USOPC requests that the Court strike allegations from the First Amended Complaint that rely on the Amateur Sports Act and the SafeSport Act to support Plaintiff's claims for relief, specifically: the last sentence of paragraph 23; the first sentence of paragraph 36; paragraphs 24-25, 68-69, 71-72, 141-42, 154-55, 168-69, and 177-78; and references to the Amateur Sports Act and the SafeSport Act in paragraphs 151, 166, 175, 184, and 203.

**B.      Fifth Claim for Relief: Negligent Failure to Warn**

Plaintiff's negligent failure to warn claim is barred by the CPLA for all the reasons discussed above. In addition, black letter law demonstrates this claim fails as matter of law.

A negligent failure to warn claim under Colorado law is typically a products liability claim. The Tenth Circuit, applying Colorado law, defined a negligent failure to warn claim as "one species of negligence," specifically, "[w]here a manufacturer or seller knows or should know of unreasonable dangers associated with the use of its product and not obvious to product users, it has a duty to warn of those dangers; and a breach of this duty constitutes negligence." *Grasmick v. Otis Elevator Co.*, 817 F.2d 88, 90 (10th Cir. 1987) (internal citations omitted). The Colorado jury instruction relating to this claim instructs litigants to choose whether the defendant was a manufacturer or seller of an article or product, and the notes listing support for the jury instruction cite to sections 388 and 399 of the Second Restatement of Torts, relating to "chattel known to be dangerous for intended use" and "chattel known to be dangerous." CJI-Civil 14:19 (*citing* Rest. (Second) of Torts §§ 388 & 390 (1965)).

This claim is inapposite to the allegations made in this case. USOPC is not a manufacturer or seller of a product, nor was Egbert a purchaser or user of a product.

Alternatively to the products liability context, negligent failure to warn claims also arise in cases related to hazardous physical conditions on property. *See, e.g.*, *Grasmick v. Otis Elevator Co.*, 817 F.2d 88, 90 (10th Cir. 1987) (battery-powered cart); *Galef v. Univ. of Colo.*, 2022 WL 3093716, at *4 (Colo. App. 2022) (slippery dormitory stairs); *Smith v. City & Cty of Denver, By and Through Bd. of Water Com'rs*, 695 P.2d 770, 771-72 (Colo. App. 1984) (rock formations and pools). This case does not relate to persons coming upon dangerous or hazardous physical conditions on property. And to the extent Plaintiff seeks to argue otherwise, the claim would again be preempted by the CPLA.

To the extent the First Amended Complaint seeks to establish that the "dangerous condition" on USOPC's property was Griswold himself, Griswold is not a product, like the battery-powered cart in *Grasmick*, and is not a physical condition on land, like the dormitory stairs in *Galef* or the rock formations in *Smith*. Even taking as true, for the purpose of this Motion, numerous facts alleged by Plaintiff that are contested by USOPC (including whether Griswold was Egbert's coach, chaperone, supervisor, or some other agent acting on USOPC's behalf; the extent of USOPC's knowledge of the alleged abuse and/or SafeSport's investigations; and whether USOPC's alleged knowledge of prior allegations against Griswold was sufficient to create a foreseeable risk of harm), this claim nonetheless fails because it does not apply to the facts alleged.

Allowing Plaintiff to bring this claim under the facts alleged would expand negligent failure to warn beyond its precedential bounds and likely require certification of the question of law to the Colorado Supreme Court under Colo. App. R. 21.1(a). But federal courts are instructed

11

to certify questions of law "when necessary to render a judgment," *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1235 (10th Cir. 2012), and here, Plaintiff's negligent failure to warn claim is practically duplicative of his other tort claims. Thus, this claim should be dismissed.

### C.    Ninth Claim for Relief: Fraud and Misrepresentation[4]

To state a claim for fraudulent misrepresentation, "a plaintiff must plausibly allege: (1) a fraudulent misrepresentation of material fact was made by the defendant; (2) the plaintiff relied on the misrepresentation; (3) the plaintiff had a right to rely, or was justified in relying on, the misrepresentation; and (4) the reliance resulted in damages." *Dean v. Wright Medical Technology, Inc.*, 593 F.Supp.3d 1086, 1095-96 (D. Colo. 2022) (internal citations omitted). The defendant must have made the material misrepresentation knowing that it was false. *Pernick v. Computershare Trust Co., Inc.*, 136 F.Supp.3d 1247, 1269 (D. Colo. 2015). Plaintiff must identify, for ***each*** of the allegedly fraudulent misrepresentations "when it was made, to whom, by whom, and in what format or context." *Dean*, 593 F.Supp.3d at 1098. In addition, allegations based on information and belief must "set forth a factual basis to support [such a] belief." *Id.*

The First Amended Complaint identifies several alleged misrepresentations by USOPC that form the basis of this claim. Each is addressed separately below. Because the new allegations Plaintiff adds related to these purported misrepresentations fail to cure the pleading deficiencies in the initial Complaint, the fraudulent misrepresentation claim must be dismissed. *See Dahn v. U.S.*, 127 F.3d at 1251; *Hermann Holdings Ltd.*, 302 F.3d at 567; *Jacquez*, 801 F.2d at 792.

---

[4] This claim is titled "Fraud and Misrepresentation." The argument herein refers to the claim as it is styled under Colorado law: "fraudulent misrepresentation."

### 1.    *December 2021 Statement.*

Plaintiff alleges that ***in December 2021*** his parents met with "a Director of U.S. Paralympic Swimming and a USOPC Coach & High Performance Sports Director" and these persons "expressed to Plaintiff's parents that Plaintiff would be safe at the facility and protected by virtue of supervision while he was on campus and away from his parents." FAC at ¶ 205. Plaintiff further alleges that "[b]ased on prior allegations, USOPC was aware that athletes training at the OPTC were not, in fact, supervised when left alone with Griswold at the OPTC and that he posed a hazard to other Paralympic athletes, including Plaintiff, when left alone with them." *Id.*

The First Amended Complaint describes the "prior allegations" USOPC purportedly knew of in paragraphs 27 and 28, which in turn refer to note 6. *Id.* at ¶¶ 27-28, n.6. Note 6 references two articles published ***in September and October 2022***—right before the Complaint was filed, and long after USOPC's alleged misrepresentations. Plaintiff goes on to allege, on information and belief, that USOPC "had actual knowledge of multiple prior instances, or at minimum credible allegations, of physical, verbal, and sexual abuse perpetrated by Griswold." *Id.* at ¶ 30.

To satisfy Rule 9(b), Plaintiff must provide plausible facts to support his allegation that USOPC knew or recklessly disregarded the fact that the alleged statements made to his parents in December 2021 were false when they were made. *Pernick* 136 F.Supp.3d at 1269. For the allegations made on information and belief, Plaintiff was also required to "set forth a factual basis to support [such a] belief." *Dean*, 593 F.Supp.3d at 1098. Plaintiff fails to satisfy these requirements. USOPC could not have known or recklessly disregarded the alleged fact that Griswold presented a safety issue to Plaintiff based on articles published after the misrepresentation was allegedly made. Further, while in its Answer (filed contemporaneously with

13

this Motion) USOPC denies these allegations based on their vagueness and lack of substantiation, it is undisputed that SafeSport did not find a violation, based on the preponderance of the evidence, for allegations of sexual misconduct made against Griswold in 2020.

Plaintiff also fails to allege facts showing how USOPC knew or should have known of SafeSport's internal processes regarding prior allegations against Griswold. While asking the Court to presume true this unsupported allegation, Plaintiff ignores that, under the SafeSport Act, (1) USOPC is expressly barred from "interfer [ing] in, or attempt[ing] to influence the outcome of, [a SafeSport] investigation," 36 U.S.C. § 220541(f)(4)(A); and (2) SafeSport's investigatory materials, including "any decision, report, memorandum, work product, notes, or case file of the Center" are confidential and not subject to discovery, *id.* at § 220541(f)(C). Plaintiff fails to provide any factual basis for USOPC's purported knowledge or reckless disregard of misconduct alleged against Griswold as having been confirmed by SafeSport, or anyone else, when it made the alleged assurance to Plaintiff.

### 2.   *July 2022 Statement*

Plaintiff alleges that, on July 9, 2022, his mother met with "a USOPC Coach & High Performance Sports Director" in Colorado Springs, and that the coach stated that Griswold would be getting married and moving to Florida and would now be "Abby's problem," referring to Griswold's fiancée. FAC at ¶ 206. According to Plaintiff, Griswold left but later returned. *Id.* On information and belief, Plaintiff alleges that "USOPC, which controlled and monitored who was permitted to enter and reside on the premises of OPTC, and would not have allowed Griswold to return so abruptly without notice, was aware that Griswold was not, in fact, permanently moving away and that he intended to return and continue training and residing in Colorado Springs." *Id.*

Plaintiff's claim cannot be premised on these allegations because Plaintiff fails to identify the unnamed coach and fails to provide a plausible factual basis for the allegation, made on information and belief, that the unnamed coach "controlled and monitored who was permitted to enter and reside on the premises of OPTC" and/or had any knowledge or authority regarding athletes' admission onto the premises. Without identifying the coach and stating how that person would have been privy to this knowledge, the claim is deficient. Plaintiff cannot, on these facts, make the required showing that the defendant knew the statement was false when it was made. *Pernick* 136 F.Supp.3d at 1269. The allegation is based on speculation as to what the unnamed coach knew or had reason to know when he spoke to Plaintiff's mother.

Further, the First Amended Complaint fails to allege plausible facts to support the allegation that this statement was a fraudulent misrepresentation of ***material*** fact. The materiality of the statement hinges on USOPC's alleged knowledge of the "sheer number of complaints of abuse" and "prior allegation(s) of predatory and abusive behavior" against Griswold. FAC at ¶ 207. Without such knowledge, the statement itself is innocuous and immaterial. However, for the reasons stated above, Plaintiff fails to set forth a factual basis to overcome the confidentiality of SafeSport investigations into Griswold or support his allegations regarding USOPC's knowledge or reckless disregard as to Griswold being a danger to Plaintiff.

Because Plaintiff failed to allege, with particularity, facts to support the elements of fraudulent misrepresentation, the claim should be dismissed as a matter of law. To the extent that Plaintiff had additional details to support his claims against USOPC, those details could and should have been pled in his Complaint or First Amended Complaint. As Plaintiff failed to provide the

requisite details on more than one opportunity, the claim must be dismissed. *See Dahn v. U.S.*, 127 F.3d at 1251; *Hermann Holdings Ltd.*, 302 F.3d at 567; *Jacquez*, 801 F.2d at 792.

**D.      Tenth Claim for Relief: Fraudulent Concealment**

To state a claim for fraudulent concealment, a plaintiff must allege: (1) the concealment of a material existing fact that in equity and good conscience should be disclosed; (2) knowledge on the part of the party against whom the claim is asserted that such a fact is being concealed; (3) ignorance of that fact on the part of the one from whom the fact is concealed; (4) the intention that the concealment be acted upon; and (5) action on the concealment resulting in damages. *Baker v. Wood, Ris & Hames, Professional Corporation*, 364 P.3d 872, 883 (Colo. 2016). The claim must be pleaded with particularity pursuant to Fed. R. Civ. P. 9(b). *Id.*; *Dean*, 593 F.Supp.3d at 1098 ("To allege fraud based on an omission, a plaintiff must identify the particular information that should have been disclosed, the reason the information should have been disclosed, the person who should have disclosed it, and the approximate time or circumstances in which the information should have been disclosed.") (internal citations omitted).

Plaintiff claims that USOPC should have, "in equity and good conscience," informed Griswold's parents "the fact that Paralympic athletes who trained at the OPTC were left unsupervised with other athletes who had been accused of sexual assault…that Plaintiff would not be monitored or supervised for safety while training at the OPTC…the fact that Griswold had a history of sexual and physical abuse allegations against him from other Paralympic athletes when Griswold was assigned to be Plaintiff's roommate and de facto chaperone, and…that Griswold

had returned to the OPTC in August 2022 when they had been told that he would be moving away from the facility permanently." FAC at ¶ 212.

First, these allegations presume without support that USOPC knew or recklessly disregarded the specific details of any investigations related to Griswold. As noted above, Plaintiff fails to set forth a factual basis to support his allegations related to USOPC's prior knowledge, and utterly ignores the undisputed outcome of SafeSport's investigation.

Second, even assuming, *arguendo*, that USOPC knew the details surrounding the Griswold allegations and investigations as alleged by Plaintiff, as a matter of law it cannot be found that USOPC should have, "in equity and good conscience," shared that information with Plaintiff's parents. To the contrary—the SafeSport Act specifically bars the actions Plaintiff claims USOPC should have taken, as USOPC has no visibility into SafeSport investigations and cannot access SafeSport's investigatory materials related to the Center's investigation of Griswold or any other athlete. 36 U.S.C. § 220541(f)(4)(A), (f)(C). Plaintiff's fraudulent concealment claim seeks damages against USOPC for failing to take actions that it is statutorily prohibited from taking; *i.e.* interfering with, gaining access to, or publicizing SafeSport's investigative materials. Put differently, Plaintiff seeks to render USOPC liable because it did not engage in unlawful conduct. Plaintiff cannot be entitled to relief on this basis; consequently, the claim must be dismissed.

## E.    Sixteenth Claim for Relief: Civil Conspiracy

In Colorado, civil conspiracy is an independent tort claim. *Double Oak Const., L.L.C. v. Cornerstone Dev. Int'l, L.L.C.*, 97 P.3d 140, 148 (Colo. App. 2003), *overruled on other grounds by L.H.M. Corp., TCD v. Martinez*, 499 P.3d 1050 (Colo. 2021). To adequately plead a claim for civil conspiracy, "[t]here must be: (1) two or more persons, and for this purpose a corporation is a

person; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof." *Jet Courier Serv., Inc. v. Mulei*, 771 P.2d 486, 502 (Colo. 1989) (citations omitted).

The persons or entities allegedly engaged in the civil conspiracy are pled to be USOPC and SafeSport. Compl. at ¶¶ 16-17, 231-332.[5] The Complaint alleges, on information and belief, that USOPC and SafeSport intended "to insulate Griswold and further victimize Plaintiff [largely because] Griswold was a premier swimmer, and because Griswold's family was deeply embedded with leaders throughout the U.S. Paralympic swimming community." *Id*. at ¶ 17. The "overt acts" alleged are "covering up, and withholding from Plaintiff and others, the allegations of abusive and predatory behavior against Defendant Griswold, as well as the results of investigations conducted in connection herewith." *Id.* at ¶ 233.

First, as noted above, the SafeSport Act expressly bars USOPC from gaining access to the Center's materials. 36 U.S.C. § 220541 (f)(C). Plaintiff offers no facts to support the suggestion that USOPC violated the SafeSport Act by unlawfully gaining access to SafeSport's investigatory files—which would have been necessary for USOPC to be involved in a "conspiracy" with SafeSport to "insulate" Griswold and "further victimize Plaintiff."

---

[5] SafeSport is no longer a party to this action, after being voluntarily dismissed by Plaintiff. [ECF No. 49]. Prior to SafeSport being voluntarily dismissed, it filed a motion to dismiss in this action on the basis that it "has absolute immunity from damages lawsuits based upon its eligibility decisions" and specifically noting that "[t]he Center is an independent nonprofit organization responsible for investigating and resolving allegations of emotional, physical, and sexual abuse within the Movement." [ECF No. 28 at 3]. SafeSport also highlighted throughout its motion the legislative authority that provides for it to "serve as the ***independent*** national safe sport organization" by which it conducts its "***independent*** adjudicatory process." *Id.* at 3-4, 8-9 (emphasis added).

Second, Plaintiff fails to plausibly allege facts sufficient to satisfy the "meeting of the minds" element. Plaintiff supports this element with conclusory statements that USOPC and SafeSport "took extensive efforts" to shield and protect Griswold to the detriment of others, FAC at ¶ 16, and "came to an agreement" to conceal allegations. *Id.* at ¶ 232. Plaintiff offers no facts to evidence the purported agreement or the "extensive efforts" undertaken in furtherance of that agreement. Courts allow some leeway for plaintiffs to allege certain facts on information and belief where the facts in question are within the opposing parties' exclusive knowledge, s*ee, e.g. Scheidt v. Klein*, 956 F.2d 963, 967 (10th Cir. 1992) (allegations of fraud could be pled on information and belief where knowledge of those facts was exclusively within opposing party's control), but Rule 12 is not so generous as to allow a court to simply presume an element is met. *Dean*, 593 F.Supp.3d 1086, 1098 ("Although plaintiff's allegations may be based upon information and belief, to the extent the facts in question are uniquely within defendant's knowledge, plaintiff must set forth a factual basis to support his beliefs….").

*Bell Atlantic Corp. v. Twombly*, a case that sets the federal standard for dismissal under Rule 12, itself concerned an alleged conspiracy, specifically, that regional telephone service monopolies conspired to restrain trade by engaging in parallel conduct in their service areas to inhibit the growth of local exchange carriers. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 544 (2007). The Court held that the allegations—which pointed to parallel conduct by various defendants as evidence of a conspiracy—failed to raise the right to relief "above the speculative level." *Id.* at 546 (a parallel conduct allegation may come close to stating a claim, "but without further factual enhancement it stops short of the line between possibility and plausibility."). Because plaintiffs offered insufficient allegations of an anticompetitive agreement, even though

that knowledge would have solely been in the defendants' hands, the Court concluded that "parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Id.* at 556-57.

Here, like the plaintiffs in *Twombly*, Plaintiff asks the Court to presume that USOPC and SafeSport agreed to engage in illegal conduct and "took extensive efforts" to conceal information from Plaintiff to protect Griswold, because both entities allegedly knew of prior allegations against Griswold, and those prior allegations were not communicated to parents and athletes. But parallel conduct, without more, is insufficient to plead a conspiracy. This Court, like the court in *Twombly*, should not presume that the "meeting of the minds" element is met when Plaintiff offers no factual enhancement to support the existence of an agreement. *Twombly*, 550 U.S. at 546. Because it not plausibly alleged, the conspiracy claim must be dismissed.

## **CONCLUSION**

Based on the above, USOPC asks that the Court dismiss Plaintiff's claims for negligence; negligent supervision, training, retention, and entrustment; negligent failure to warn; gross negligence; fraud and misrepresentation; fraudulent concealment; and civil conspiracy. In addition, USOPC requests that the Court strike references to the Amateur Sports Act and the SafeSport Act in the First Amended Complaint, specifically the last sentence of paragraph 23, the first sentence of paragraph 36, and paragraphs 24-25, 68-69, 71-72, 141-42, 151, 154-55, 166, 168-69, 175, 177-78, 184, & 203.

Dated: April 19, 2023.               Respectfully submitted,

*/s/ Julie M. Walker*
Julie M. Walker
Lidiana Rios
IRELAND STAPLETON PRYOR & PASCOE, PC
1660 Lincoln Street, Suite 3000
Denver, Colorado 80264
Telephone: (303) 623-2700
E-mail: jwalker@irelandstapleton.com
        lrios@irelandstapleton.com

*Attorneys for Defendant United States Olympic & Paralympic Committee*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 19, 2023, the foregoing **UNITED STATES OLYMPIC & PARALYMPIC COMMITTEE'S PARTIAL MOTION TO DISMISS PLAINTIFF'S CORRECTED FIRST AMENDED COMPLAINT AND TO STRIKE** was filed with the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Julie M. Walker*
Julie M. Walker

5153749.1