UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:22-cv-02943-SKC-MEH

PARKER EGBERT,

    Plaintiff,

v.

ROBERT GRISWOLD,
UNITED STATES OLYMPIC & PARALYMPIC COMMITTEE, and
DOES 1 THROUGH 50, inclusive, whose true names are unknown,

    Defendants.

---

ORDER RE: DEFENDANT USOPC'S
MOTION TO DISMISS AND TO STRIKE (DKT. 66)

---

The above Motion is now before the Court. Plaintiff filed his First Amended Complaint (FAC) (Dkt. 58) asserting 11 claims against Defendant United States Olympic & Paralympic Committee ("USOPC" or "Defendant") for: (1) negligence; (2) negligent supervision, training, retention, and entrustment; (3) negligent failure to warn; (4) gross negligence; (5) premises liability; (6) express/implied agency; (7) fraud and misrepresentation; (8) fraudulent concealment; (9) intentional infliction of emotional distress; (10) negligent infliction of emotional distress; and (11) civil conspiracy.[1] The Motion seeks dismissal of seven of these claims under Fed. R. Civ.

---

[1] Defendant Robert Griswold has not moved to dismiss the claims asserted against him.

1

P. 12(b)(6), specifically: negligence; negligent supervision, training, retention, and entrustment; negligent failure to warn; gross negligence; fraud and misrepresentation; fraudulent concealment; and civil conspiracy. The Motion also seeks to strike certain allegations in the FAC under Fed. R. Civ. P. 12(f).

The Court's jurisdiction over this matter arises under 28 U.S.C. § 1332(a)(1). The Court held a hearing on the Motion on September 4, 2024. Having considered the full briefing on the Motion,[2] pertinent legal authorities, and the parties' arguments from the hearing, the Court now issues this Order partially granting and partially denying the Motion.

At the hearing, Plaintiff voluntarily withdrew his premises liability claim pertaining to his alleged injuries that occurred at the 2020 Tokyo Games. And Defendant voluntarily withdrew the Motion pertaining to dismissal of Plaintiff's fraud claims. Thus, the Court deems Plaintiff's premises liability claim withdrawn regarding the 2020 Tokyo Games and Defendant's Motion withdrawn regarding the fraud claims. This Order, therefore, addresses Defendant's request for dismissal of Plaintiff's negligence and civil conspiracy claims only.

## BACKGROUND

This background is taken from the well-pleaded factual allegations in the FAC, which the Court accepts as true and views in the light most favorable to Plaintiff.

---

[2] Plaintiff filed a Surreply (Dkt. 98). Surreplies are not contemplated by the Federal Rules of Civil Procedure. Plaintiff neither requested nor received permission to file his Surreply, and therefore, the Court has not considered it.

*Casanova v. Ulibarri*, 595 F.3d 1120, 1124-25 (10th Cir. 2010). Defendant USOPC is a federally chartered corporation under the Ted Stevens Olympic and Amateur Sports Act, 36 U.S.C. § 220501 et seq. ("Amateur Sports Act"). It is headquartered and maintains its principal place of business in Colorado Springs, Colorado.

Plaintiff was born with autism and has suffered from developmental delay and intellectual disability his entire life. His mental capacity is that of a five-year-old. At the approximate age of 16, Plaintiff defied the odds by securing a place on the United States Paralympics Swimming team and competing at the Paralympic Games. He was named to the 2020 U.S. Paralympics Swimming national team after having a successful showing at the Paralympic trials in June 2021, and competed in the 100-meter freestyle, 200-meter freestyle, and 100-meter backstroke at the 2020 Paralympic Games in Tokyo (which occurred in August 2021 due to the COVID-19 pandemic). His rise up the ranks continued in December 2021 when he won three gold medals and a silver medal at the U.S. Paralympics Swimming National Championship in Greensboro, North Carolina.

After Plaintiff's success at the National Championship, Defendant approached Plaintiff's parents about having him move to the Olympic & Paralympic Training Center ("Training Center") in Colorado Springs to live and train. Defendant owns and operates the Training Center. During conversations with Plaintiff and his parents, Defendant assured them that the Training Center was a safe environment for all Olympic and Paralympic athletes and that it had special guidelines in place to ensure

the protection of athletes who, like Plaintiff, suffered from disabilities making them particularly vulnerable to abuse. Relying on Defendant's assurances, Plaintiff and his parents agreed that he would move to the Training Center to pursue his training to be a Paralympic swimmer.

The FAC alleges that behind the scenes, however, Plaintiff was being violently and repeatedly sexually assaulted and harassed by his teammate, Defendant Griswold. Beginning with the Paralympic trials in June of 2021, Griswold made a concerted effort to befriend Plaintiff, constantly referring to Plaintiff as his "little buddy." The FAC alleges the grooming intensified in August 2021, when Plaintiff and Griswold traveled to Tokyo to compete in the 2020 Paralympic Games where Griswold was Plaintiff's "de-facto chaperone" and was given prolonged unsupervised access to Plaintiff because the two shared a room in the Olympic Village. According to the FAC, "[i]n addition to placing Griswold in Plaintiff's bedroom, [Defendant] assigned Griswold to be a supervisor of Plaintiff, despite the fact that Griswold was a peer team member on the swim team rather than an adult supervisor and had no training or qualifications to serve as a supervisor." Dkt. 58, ¶10. And "[i]t was also during this time in Tokyo that Griswold began his sexual assaults on Plaintiff." *Id.*

When Plaintiff moved to the Training Center after the 2021 games in Tokyo, Defendant appointed Griswold as Plaintiff's "roommate and de facto chaperone" yet again. The FAC alleges that Defendant's "decision to allow Plaintiff to share a room and shower with Defendant Griswold without supervision, are especially troubling

4

considering the extent of Plaintiff's disabilities[.]" *Id.* at ¶34. The FAC alleges that Griswold "repeatedly subjected Plaintiff to violent abuse and rape" between June 2021 and August 2022. Dkt. ¶21.

## LEGAL PRINCIPLES

**A.     Rule 12(b)(6)**

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). While the Court accepts the well-pleaded facts as true and views the allegations in the light most favorable to the non-movant, the Court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, "a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Id.* at 679 (cleaned up).

**B.     Rule 12(f)**

Motions to strike under Rule 12(f) are generally disfavored and rarely granted. *Sierra Club v. Tri-State Generation & Transmission Ass'n, Inc.*, 173 F.R.D. 275, 285 (D. Colo. 1997). "[B]ecause federal judges have made it clear . . . in many substantive contexts, that Rule 12(f) motions to strike . . . are not favored, often being considered purely cosmetic or 'time wasters,' there appears to be general judicial agreement . . .

that they should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy." 5C Charles A. Wright et al., Fed. Prac. & Proc. § 1382 (3d ed. 2019) (footnotes omitted). Motions to strike are thus "usually only granted when the allegations have no bearing on the controversy and the movant can show that he has been prejudiced." *Kimpton Hotel & Rest. Grp., LLC v. Monaco Inn, Inc.*, No. CIV.A. 07-CV-01514-WDM-BNB, 2008 WL 140488, at *1 (D. Colo. Jan. 11, 2008).

## ANALYSIS

A.  **The Motion to Dismiss**

   1.  **The Negligence Claims (Third, Fourth, Fifth, and Sixth Claims for Relief)**

The FAC alleges a host of duties Plaintiff claims Defendant owed him concerning Griswold's alleged repeated sexual assaults. Defendant argues Plaintiff's negligence claims for his alleged injuries that occurred when the two lived at the Training Center are barred by the Colorado Premises Liability Act, Colo. Rev. Stat. § 13-21-115(2) (CPLA). *See Raup v. Vail Summit Resorts, Inc.*, 160 F. Supp. 3d 1285, 1289 (D. Colo. 2016) (the CPLA provides the exclusive remedy for all common law claims involving landowner duties). The CPLA provides:

6

> In any civil action brought against a landowner by a person who alleges injury occurring while on the real property of another and by reason of the condition of such property, or activities conducted or circumstances existing on such property, the landowner is liable only as provided in subsection (4)[3] of this section.

Colo. Rev. Stat. § 13-21-115(3).

The Colorado Supreme Court has held that the CPLA "applies to conditions, activities, and circumstances on the property that the landowner is liable for in its legal capacity as a landowner[,]" meaning the statute is not "restricted solely to activities and circumstances that are directly or inherently related to the land." *Larrieu v. Best Buy Stores, L.P.*, 303 P.3d 558, 559 (Colo. 2013). When it applies, it completely occupies the field and nullifies the common law regarding landowner duties. *Vigil v. Franklin*, 103 P.3d 322, 328 (Colo. 2004). "Therefore, so long as a person alleges injury that occurred on the property of another and arose out of a condition of the property or by activities conducted on the property, the claim must be brought solely under the CPLA." *Traynom v. Cinemark USA, Inc.*, 940 F. Supp. 2d 1339, 1358 (D. Colo. 2013).

But wait. If a plaintiff alleges facts supporting a duty separate from those a landowner owes its entrants, then the plaintiff may bring both an alternative negligence claim and a CPLA claim. *Cf. Clark v. Hyatt Hotels Corp.*, No. 1:20-CV-01236-RM-SKC, 2021 WL 8129700, at *3 (D. Colo. Dec. 13, 2021), *report and*

---

[3] Subsection -115(4) of the CPLA identifies the differing duties a landowner owes to trespassers, licensees, and invitees.

7

*recommendation adopted*, 2022 WL 884282 (D. Colo. Mar. 25, 2022) (plaintiffs failed to plead an alternative negligence claim where the alleged negligent acts were the same as those described in Plaintiffs' claim for premises liability); *Davis v. Comcast Corp.*, No. 18-CV-00720-MEH, 2018 WL 3303300, at *3 (D. Colo. July 5, 2018) (plaintiff could have pleaded a negligence claim in the alternative "by alleging facts supporting a finding that [defendant] owed her a duty separate from that which landowners owe their entrants"). Where the alleged common law duties overlap with the CPLA, however, courts typically find abrogation of the common law duties.

For example, in *Traynom*, the court observed that Colorado courts "have determined that the CPLA abrogates claims of negligent training, supervision and retention when the claims relate to conditions of or activities occurring on the property." *Traynom*, 940 F. Supp. 2d at 1358. That court went on to find that the plaintiff's claims for failure to train employees to monitor the premises and respond to emergencies were "clearly related to injuries that occurred on Defendant's property and arose out of a condition of the property or by activities conducted on the property." *Id.*;[4] *see also Casey v. Christie Lodge Owners Assoc., Inc.*, 923 P.2d 365, 367–68 (Colo. App. 1996) (plaintiff's claims that defendant negligently supervised and retained its employees related to condition of the premises and were barred by the CPLA).

---

[4] The quoted excerpts are from the Recommendation of United States Magistrate Judge, which is contained in line with the District Judge's cited Order accepting the Recommendation in part. *See id.* at 1339-48 (district judge order accepting the Recommendation in part) and 1348-59 (magistrate judge's Recommendation).

8

The FAC alleges numerous and varied duties relevant to the negligence claims and which the Court discerns and summarizes as follows:[5]

- a duty to protect athletes from abuse, including sexual abuse (Dkt. 58, ¶¶23, 72, 120)

- a duty to supervise and protect its athletes (*Id.* at ¶¶36, 74, 76, 121)

- by "operating the programs and facilities at [the Training Center], where athletes live and train, and organizing the athletes' competition in Olympic events, [Defendant] undertook a duty to supervise and protect those athletes" (*Id.* at ¶36)

- a heightened duty with respect to athletes with known disabilities who are foreseeably more vulnerable to abuse (*Id.* at ¶¶36, 75, 143)

- a duty to protect Plaintiff from physical, verbal, and sexual abuse (*Id.* at ¶¶140, 170)

- a duty under the Amateur Sports Act "to promote a safe environment in sports that is free from abuse, including emotional, physical, and sexual abuse, of any amateur athlete" (*Id.* at ¶141)

- a duty arising from a special relationship between Defendant and Plaintiff (*Id.* at ¶145)

- a duty to "adequately supervise Plaintiff, such that Plaintiff would not be subjected to [abuse]" (*Id.* at ¶¶153, 165)

---

[5] Other than its additional argument for dismissal of the claim for negligent failure to warn and its arguments against any alleged statutory duties (both of which are addressed later in this Order), Defendant does not challenge any of these alleged duties as a matter of law. It instead argues Plaintiff may not bring her negligence claims because her exclusive remedy for the injuries suffered at the Training Center is the CPLA, thus assuming the existence of these duties. Therefore, the Court does not separately analyze these duties to determine whether they exist as a matter of law, except to address the Court's finding of a special relationship as alleged in the FAC. *N.M. by & through Lopez v. Trujillo*, 397 P.3d 370, 374 (Colo. 2017) (whether a duty exists is a question of law for the court).

9

- a duty to properly train its officers, directors, employees, agents, etc., to adequately supervise Plaintiff and a duty not to retain these individuals who are capable of perpetuating or allowing abuse (*Id.* at ¶¶156, 165)

- a duty to supervise Griswold (*Id.* at ¶162)

- a duty to warn Plaintiff or his parents of the danger Griswold posed (*Id.* at ¶174).

Considering these alleged duties, the only duties the Court finds plausibly separable from Defendant's duties as a landowner vis-à-vis the Training Center include the alleged duty to adequately supervise the Plaintiff; the duty to train its personnel and agents to adequately supervise the Plaintiff; and a duty to act to protect Plaintiff arising out of a special relationship between Defendant and Plaintiff.

The latter—a special relationship—requires elaboration. Under Colorado law, courts consider several factors when determining whether the law imposes a duty on a defendant. These include the risk involved, the foreseeability and likelihood of injury weighed against the social utility of the defendant's conduct, the magnitude of the burden of guarding against injury or harm, and the consequences of placing the burden on the defendant. *Taco Bell, Inc. v. Lannon*, 744 P.2d 43, 46 (Colo. 1987). "Other considerations may also be relevant, depending on the circumstances of each particular case." *Id.* "No one factor is controlling, and the question of whether a duty should be imposed in a particular case is essentially one of fairness under contemporary standards—whether reasonable persons would recognize a duty and agree that it exists." *Id.*

When weighing these factors, the Court finds the FAC's allegations regarding Plaintiff's extensive intellectual disabilities and his five-year-old mental capacity weigh heavy in the balance. This is particularly so given the FAC's allegations that Plaintiff's disabilities make him particularly vulnerable to abuse, and its allegation the USOPC "explicitly promised Plaintiff's parents . . . that the [Training Center] was a safe environment, and that they could trust USOPC to supervise and protect Plaintiff—notwithstanding his disabilities—while he was in USOPC's care and custody." Dkt. 58, ¶122.

"The special relations giving rise to a duty to take affirmative protective action include those situations in which a person ' . . . voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection.'" *Perreira v. State*, 768 P.2d 1198, 1208 (Colo. 1989) (quoting Restatement (Second) of Torts § 314A (1965)); *Univ. of Denver v. Whitlock*, 744 P.2d 54, 58 (Colo. 1987) (noting comment b to the Restatement (Second) of Torts § 314A mentions that the law appears to be working toward a recognition of the duty to aid or protect in relations of dependence). Moreover, the express codified purpose of the USOPC is "to promote a safe environment in sports that is free from abuse, including emotional, physical, and sexual abuse, of any amateur athlete."[6] 36 U.S.C. §

---

[6] Defendant argues there is no private cause of action under the federal statutes alleged and cited in the FAC. As the Court explained during the hearing, however, the Court does not read the FAC as attempting to bring claims under the referenced statutes. Rather, Plaintiff cites those statutes in his effort to argue some statutory duty supporting his negligence claims.

11

220503(15); *Taco Bell*, 744 P.2d at 46 ("Other considerations [to finding a duty] may also be relevant, depending on the circumstances of each particular case.").

Regarding Plaintiff's allegations involving the Training Center, the FAC plausibly alleges alternative negligence claims based on a duty Defendant owed to adequately supervise the Plaintiff, to train its personnel and agents to adequately supervise the Plaintiff, and to act to protect Plaintiff arising out of a special relationship between Defendant and Plaintiff. All other alleged duties in support of Plaintiff's negligence claims are abrogated by the CPLA and are dismissed, with prejudice, for the claimed injuries occurring at the Training Center.

### 2. The Negligent Failure to Warn Claim (Fifth Claim for Relief)

Concerning Plaintiff's alleged injuries that occurred during the 2020 Tokyo Games, Plaintiff alleges Defendant had a duty to warn Plaintiff and his parents "of

---

The Court, however, does not find the referenced statutes give rise to a statutory duty here. To be sure, the Court instead finds that § 220503(15) of the Amateur Sports Act supports a finding of a special relationship between Plaintiff and Defendant—as an amateur athlete, Plaintiff belongs to the class of persons the statute was designed to protect and the injuries he claims are the type the statute is designed to protect against.

The recent case of *Doe v. United States Ctr. for SafeSport, Inc.*, No. C-23-6067 BHS, 2024 WL 3924663, at *1 (W.D. Wash. Aug. 23, 2024), argued by Defendant at the hearing doesn't support its argument. In that case, the plaintiff was the alleged perpetrator of sexual assaults who sued SafeSport over how it investigated the allegations against him. In contrast, Plaintiff here is the alleged victim bringing claims against his alleged perpetrator and the USOPC, and it involves the latter's alleged failure to supervise Plaintiff or adequately train its staff to supervise Plaintiff, and its failure to take action to protect Plaintiff based on a special relationship.

the significant and foreseeable risk of danger Defendant Griswold posed, particularly in light of USOPC's decision to allow Griswold to supervise Plaintiff and sleep in the same bedroom as Plaintiff, even after USOPC was informed of allegations of sexual abuse committed by Griswold." Dkt. 58, ¶170. Defendant argues this claim should be dismissed because negligent failure to warn claims are limited to products liability cases or cases involving hazardous conditions on property. Plaintiff counters that a failure to warn claim gives rise to a claim for negligence.

The question here is whether Defendant owed a legal duty to Plaintiff, applying the *Taco Bell* factors (discussed above) to determine the existence of a duty. *Campbell v. Burt Toyota-Diahatsu, Inc.*, 983 P.2d 95, 97 (Colo. App. 1998) (applying those factors to determine whether defendant had a duty to warn); *Molosz v. Hohertz*, 957 P.2d 1049, 1050 (Colo. App. 1998) (doing the same). Weighing those factors, the Court finds the FAC fails to state a plausible claim for negligent failure to warn.

The consequences of placing the burden on Defendant under the duty alleged here is the most significant factor weighing against finding a duty in this case. Plaintiff posits a duty by Defendant to warn him and his parents "of the significant and foreseeable risk of danger Defendant Griswold posed . . . even after USOPC was informed of allegations of sexual abuse committed by Griswold." But the FAC alleges Griswold has not been arrested or charged in connection with any allegations of sexual assault. Dkt. 58, ¶119. As a result, the consequences of placing a duty to warn on Defendant based on mere allegations (however credible) or unconfirmed reports

13

accusing Griswold of criminal behavior would expose Defendant to possible defamation claims and raises other concerns over the privacy rights for those implicated in those allegations. Colorado courts have declined to impose a duty to warn when the consequences of doing so would result in legitimate practical consequences that are potentially wide-ranging. *See Davenport v. Cmty. Corr. of Pikes Peak Region, Inc.*, 962 P.2d 963, 968-69 (Colo. 1998) (no duty to warn imposed on a community corrections facility to protect an automobile passenger from the dangerous behavior of a resident of the facility because finding a duty would subject the corrections facility to substantial liability exposure and subvert the effectiveness of its programs); *Molosz*, 957 P.2d at 1051 ("The plaintiffs seek to impose on defendants a burden of potentially unlimited magnitude. If the defendants' duty was predicated upon their knowledge of the tenant's prior acts of violence, they would be required to warn almost all people with whom the tenant could potentially contact, especially at or near the leased premises.").

Because the Court finds the duty to warn as alleged in the FAC does not exist, the negligent failure to warn claim is subject to dismissal, with prejudice, under Rule 12(b)(6).

### 3. Civil Conspiracy Claim (Thirteenth Claim for Relief)

The FAC alleges a civil conspiracy between the USOPC and non-party U.S. Center for SafeSport ("SafeSport") to cover up prior allegations of abuse of other (or at least one other) swimmers by Griswold. Dkt. 58, ¶¶231-35. The prima facie case

for civil conspiracy includes five elements: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts in furtherance of the course of action; and (5) damages. *Jet Courier Serv., Inc. v. Mulei*, 771 P.2d 486, 502 (Colo. 1989).

The Court finds the FAC fails to include sufficient facts to plausibly allege the USOPC and SafeSport reached a meeting of the minds to cover up prior allegations of abuse concerning Griswold. To be sure, many of Plaintiff's allegations regarding the conspiracy are either based "upon information and belief" or are simply conclusory statements without supporting factual allegations. Dkt. 58, ¶¶30, 35, 127, 146, 164, 173, 182, 232-33. *Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1303 (10th Cir. 2021) ("Courts do not assume as true allegations that are legal conclusions, formulaic recitations of elements, or naked assertions devoid of further factual enhancement.").

While Plaintiff is correct in arguing that evidence of an express agreement is not necessary at the pleading stage, at a minimum, Plaintiff still must plead sufficient facts plausibly revealing "some indicia of an agreement sufficient to prove that the defendants consciously conspired and deliberately pursued a common plan or design that resulted in a tortious act." *Loughridge v. Goodyear Tire & Rubber Co.*, 192 F. Supp. 2d 1175, 1186 (D. Colo. 2002). The FAC fails to do this in a plausible fashion to satisfy Rule 12(b)(6). The Court grants the motion and dismisses this claim without prejudice.

**B. Motion to Strike**

Rule 12(f) provides that a court may order stricken from any pleading any redundant, immaterial, impertinent, or scandalous matter. Fed. R. Civ. P. 12(f). The USOPC requests that the Court strike references to the Amateur Sports Act and the SafeSport Act in the FAC, specifically the last sentence of paragraph 23, the first sentence of paragraph 36, and paragraphs 24-25, 68-69, 71-72, 141-42, 151, 154-55, 166, 168-69, 175, 177-78, 184, and 203. Defendant argues the allegations in the FAC referring to those statutes are immaterial to the resolution of claims and defenses in this case, and that allowing Plaintiff to support his claims using statutes that do not create a private right of action would prejudice Defendant. The Court disagrees.

There is nothing strike worthy in the FAC, especially when considering the pleading is evidence of nothing. The statutory references in the FAC are not particularly redundant, immaterial, impertinent, or scandalous. To be sure, the Court found § 220503(15) of the Amateur Sports Act supports finding a special relationship between Defendant and Plaintiff. *See Lewis v. Powers*, No. 15-CV-02692-MEH, 2016 WL 11693471, at *7 (D. Colo. May 13, 2016) (finding the complaint plausibly alleged a special relationship between the plaintiff and defendant based on the Rehabilitation Act). The Motion to Strike is DENIED.

\*   \*   \*

For the reasons shared above, the Court GRANTS THE MOTION TO DISMISS IN PART and DENIES THE MOTION TO DISMISS IN PART. The Motion to Strike is DENIED.

DATED: September 16, 2024

BY THE COURT:

_____
S. Kato Crews
United States District Judge

17