UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No.: 1:22-cv-02943-SKC-MEH

PARKER EGBERT,

     Plaintiff,

v.

ROBERT GRISWOLD,
UNITED STATES OLYMPIC & PARALYMPIC COMMITTEE, and
DOES 1 THROUGH 50, inclusive, whose true names are unknown,

     Defendants.

---

## ORDER RE: PLAINTIFF'S STATUS AS AN INVITEE OR LICENSEE UNDER THE COLORADO PREMISES LIABILITY ACT

---

During a hearing on September 4, 2024, Plaintiff and Defendant USOPC indicated they had a dispute over whether Plaintiff was an invitee or licensee of USOPC under the Colorado Premises Liability Act (CPLA or Act), Colo. Rev. Stat. § 13-21-115, when he lived at the Olympic & Paralympic Training Center ("Training Center") in Colorado Springs, Colorado. The Court ordered the parties to file simultaneous briefs on the issue. Dkt. 147. The parties filed their briefs on September 13, 2024. Dkt. 151 (USOPC's Brief); Dkt. 152 (Plaintiff's Brief); *see also* Dkt. 154 (USOPC's Response Brief); Dkt. 155 (Plaintiff's Reply Brief). Having considered the matter and applicable law, the Court finds Plaintiff was an invitee under the CPLA.

1

## LEGAL PRINCIPLES

The CPLA governs the duties a landowner owes to individuals on their land. *Vigil v. Franklin*, 103 P.3d 322, 326 (Colo. 2004). It preempts common law negligence claims and provides the exclusive remedy for claims against a landowner for injuries occurring on their land. Colo. Rev. Stat. § 13-21-115(3). Under the Act, a landowner's specific duties depend on whether the plaintiff is classified as a trespasser, a licensee, or an invitee. *Id.* It is undisputed that USOPC was a "landowner" under the Act as concerns the Training Center where Plaintiff lived and trained for a period and where he alleges Defendant Griswold "repeatedly subjected Plaintiff to violent abuse and rape" between June 2021 and August 2022. Dkt. ¶21. Categorizing the status of a visitor on another's land as an "invitee" or "licensee" is a question of law for the court. Colo. Rev. Stat. § 13–21–115(6).

Plaintiff argues he was an "invitee" under the CPLA. An "invitee" is "a person who enters or remains on the land of another to transact business in which the parties are mutually interested or who enters or remains on such land in response to the landowner's express or implied representation that the public is requested, expected, or intended to enter or remain." *Id.* at § -115(7)(a). "[A]n invitee may recover for damages caused by the landowner's unreasonable failure to exercise reasonable care to protect against dangers of which he actually knew or should have known." *Id.* at § -115(3)(c)(I).

2

Defendant argues Plaintiff was a "licensee" under the CPLA. A "licensee" is "a person who enters or remains on the land of another for the licensee's own convenience or to advance the licensee's own interests, pursuant to the landowner's permission or consent. [It] includes a social guest." *Id.* at § -115(7)(c). "A licensee may recover only for damages caused: (I) By the landowner's unreasonable failure to exercise reasonable care with respect to dangers created by the landowner of which the landowner actually knew; or (II) By the landowner's unreasonable failure to warn of dangers not created by the landowner which are not ordinarily present on property of the type involved and of which the landowner actually knew." *Id.* at § -115(3)(b).

"The principal distinction between invitee and licensee 'turns on whether that person's presence on the land was affirmatively invited or merely permitted.'" *Legro v. Robinson*, 369 P.3d 785, 791 (Colo. App. 2015) (quoting *Wycoff v. Grace Cmty. Church of Assemblies of God*, 251 P.3d 1260, 1267 (Colo. App. 2010)). If affirmatively invited, the person is an invitee; if their presence is merely permitted, they are a licensee. *Id.* "'[A]n invitation is conduct which justifies others in believing that the possessor desires them to enter the land; permission is conduct justifying others in believing that the possessor is willing that they shall enter if they desire to do so.'" *Id.* (quoting Restatement (Second) of Torts § 332 cmt. b (1965)).

What also distinguishes invitees from licensees is an invitee includes someone who enters or remains on another's land "to transact business in which the parties are mutually interested[.]" Colo. Rev. Stat. § 13-21-115(7)(a). Colorado courts have

interpreted this to mean that the transaction of business in which the parties are mutually interested "need not invariably be engaged in *commercial* activity." *Wycoff*, 251 P.3d at 1267 (emphasis in original). To that end, the Colorado Court of Appeals has noted that "other courts have extended 'business invitee' status where nonprofit entities encouraged attendance by individuals whose presence provided no apparent economic benefit." *Id.* at 1268 (citing cases).

Another aspect that distinguishes invitees and licensees is an invitee also includes someone "who enters or remains on such land in response to the landowner's express or implied representation that the public is requested, expected, or intended to enter or remain." Colo. Rev. Stat. § 13-21-115(7)(a). Colorado courts have interpreted this to mean that "one can be a 'public' invitee where an invitation is extended to 'the public, *or classes or members of it*.'" *Wycoff*, 251 P.3d at 1268 (citing Restatement (Second) of Torts § 332 cmt. c (emphasis added)). To this end, the Colorado Court of Appeals has noted that a garden club member was an invitee of an estate "opened to those members of the public who were on the Palm Beach Garden Club tour of homes," and a girl-scout leader was an invitee where a bank allowed the troop (a segment of the public) free use of its facilities. *Id.* (citing *Post v. Lunney*, 261 So.2d 146, 148 (Fla. 1972) and *McKinnon v. Washington Fed. Sav. & Loan Ass'n*, 68 Wash.2d 644, 414 P.2d 773, 777–78 (1966), respectively).

And finally, invitations that carry explicit or implicit assurances of safety to those invited on the land entitles those visitors to invitee status. *See id.* ("Ultimately,

plaintiff was an invitee because Grace's invitation carried an implicit assurance that Grace would act with reasonable care to protect her. [ ] Few youths would attend— and even fewer parents would allow and pay for their child's attendance at—an overnight event whose sponsor disclaimed any intent or ability to make the event reasonably safe.").

## ANALYSIS

Plaintiff argues he was an invitee of USOPC because (1) he was affirmatively invited to the Training Center and assured safety; and (2) his presence there was for his and USOPC's mutual benefit. USOPC argues Plaintiff was a licensee because: (1) he was at the Training Center to advance his own interests and did not share a mutually beneficial business relationship with USOPC; (2) USOPC did not affirmatively invite him to live or train at the Training Center; and (3) there is no evidence that USOPC provided Plaintiff assurances of safety. Dkts. 151, pp.2, 5; 154, p.3. None of USOPC's arguments are persuasive.

**1.    USOPC Affirmatively Invited Plaintiff to Live and Train at the Training Center**

It is undisputed that Plaintiff had to complete an application process to live and train at the Training Center.[1] USOPC downplays the application process by

---

[1] The Court previously ordered the parties to confer and email the Court a copy of whatever correspondence might exist from USOPC to Plaintiff informing him of his successful application. The Court received that email on October 25, 2024. That email was not helpful. In that email, the parties explained:

arguing it did not recruit or solicit Plaintiff to live or train there, but rather, Plaintiff (through his parents) sought out USOPC for the opportunity. But this distinction makes no difference.

The Court takes judicial notice of USOPC's representations on its website concerning its Resident Program. https://www.usopc.org/training-centers/colorado-springs (last accessed 10/25/2024); *see* Fed. R. Evid. 201; *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007) ("It is not uncommon for courts to take judicial notice of factual information found on the world wide web."). There, USOPC indicates the Training Center "offers a Resident Program which allows *approved* athletes to live on-complex in the resident dormitories[.] Athletes *accepted*

---

In response to the Court's Order dated October 21, 2024, attached are documents and emails between Plaintiff's family and representatives from USOPC that are relevant to Plaintiff's application and acceptance into the OPTC.

It is Plaintiff's position that his mother, Laura Egbert, was notified of Plaintiff's acceptance into the OPTC resident program verbally by Nathan Manley on December 17, 2021 in Greensboro, NC. However, there is no testimony regarding that conversation in the record and Defendant USOPC will not consent to that position at this current time.

Moreover, all parties agree that Plaintiff submitted an application to be accepted into the OPTC resident program per USOPC's email dated November 16, 2021 (bates labeled USOPC_001810: pg. 4 of the pdf). However, Plaintiff's application has not been produced in discovery.

Our office is providing a blank application per the link in USOPC's email (bates labeled USOPC_001810), and it is Plaintiff's position that this application is identical to the one that was submitted on Plaintiff's behalf, however, this has not been confirmed in discovery and USOPC will not consent to that position at this current time.

*in* the Resident Program are eligible to utilize [Training Center] facilities and services throughout the year." *Id.* (emphasis added). Further down on the same page, the website has "Frequently Asked Questions." *Id.* One question posed is "How does an athlete qualify for a resident program?" *Id.* The answer: "Each sport has different criteria to *earn residency* at the [Training Center]. National Governing Bodies (NGBs) work closely with USOPC Sport Performance to *identify which athletes will be selected to* the resident program. Athlete *selection* can range from emerging or developmental talent to Olympians and Paralympians." *Id.* (emphasis added). The Court also takes judicial notice of the OPTC Rates & Policies document also found on the website. *Id.*; *see also* Dkt. 151-1, pp.5-27 (containing the 2020 Policies & Rates). That document defines a Resident Athlete (on-site) as: "a guest who has been *approved by USOPC* Sport Performance, *after NGB recommendation, to live and train at the [Training Center]* for 90 days or more (CS) or a full one (1) year at a time (LP)." https://www.usopc.org/training-centers/colorado-springs, OPTC Rates & Policies, p.5.

The Court sees little daylight between a person affirmatively "invited" to live and train on a landowner's property versus one who is "approved," "selected," or "accepted," to do the same after first completing an application for the privilege to do so. Under the circumstances of this case, the Court finds USOPC's "approval," "selection," and "acceptance" of Plaintiff into its program to live and train at the Training Center is tantamount to an affirmative "invitation." To be sure, Plaintiff was neither taking short cuts across the Training Center, nor a loafer or loiterer or

one who entered the Training Center to get out of the weather with USOPC's permission, nor a spectator or sightseer not in any way encouraged to come to the Training Center. *Wycoff*, 251 P.3d at 1267 (citing these examples of licensees). He instead, after having his application approved by USOPC, was affirmatively invited to live and train at the Training Center for an extended period. Notably, during that period, USOPC offered Plaintiff dining services, transportation services, a swimming pool, a dorm room, and other training and daily living amenities. *See, e.g.,* https://www.usopc.org/training-centers/colorado-springs; *see also* Dkt. 151-1, p.6 (defining on-site services to include "housing, full access to the dining room (meals), and based on program approval, access to training facilities/venues (gyms, pools, meeting space, strength and conditioning, medical services, and sport performance services)").

This is all in addition to the fact that Plaintiff was an elite paralympic swimmer, and thus, in a specific class of the public when USOPC invited him to live and train at the Training Center. *Wycoff*, 251 P.3d at 1268 ("[O]ne can be a 'public' invitee where an invitation is extended to 'the public, *or classes or members of it.*'") (citation omitted); Colo. Rev. Stat. § 13-21-115(7)(a). The Court finds USOPC affirmatively invited Plaintiff to live and train at the Training Center.

## 2.    USOPC and Plaintiff Transacted Business of Mutual Interest

Plaintiff was a paralympic swimmer who aspired to Olympic-level performance and USOPC is in the business of recruiting and supporting elite paralympic

swimmers. Regarding the latter, through its affiliated entity, U.S. Paralympic Swimming, USOPC's focus is "[t]o be the best swimming nation in the world, both in gold medal and overall medal count at the Paralympic Games[.]" Dkt. 155-1, p.6. One area of achievement on which it focuses is to "[r]ecruit and support elite swimmers[.]" *Id.* Its stated mission is "[t]o provide the right athletes (elite level) with the right staff (trained professional coaches) and involved in the right competitions (high quality with high competitiveness) to help athletes sustain competitive excellence and thereby inspire all Americans." *Id.* at p.7. And its "continued goal" is "to find developmental athletes, find athletes who are currently training, create opportunities for competition, and assist coaches to develop highly trained athletes who can medal at major World Para Swimming international competitions." *Id.* at p.12; *see also id.* at p.17 ("The U.S. Paralympics Swimming Team is very fortunate to have a resident program that is hosted at the [Training Center]. The goal of the program is to provide training and support to athletes that show the potential to be Paralympians who do not have resources where they live."). Again looking at USOPC's website, its stated mission there is "[e]mpowering the competitive excellence and well-being of Team USA athletes, championing the power of sport, and inspiring the nation." *See* https://www.usopc.org/about-the-usopc. Elsewhere it describes its mission of "holistically supporting athletes via a variety of programs for both athletes and their National Governing Bodies (NGBs)." *Id.* No doubt, from its many pronouncements of

its mission, goals, and aspirations, USOPC's business (in relevant part) is finding, recruiting, and supporting, elite swimmers like Plaintiff.

Even more convincing of USOPC's business interests in this case is the list of its codified purposes. *See* 36 U.S.C. § 220503. One codified purpose of the USOPC is "to exercise exclusive jurisdiction . . . over—(A) *all matters pertaining to United States participation in the . . . Paralympic Games* . . .; and (B) the organization of the . . . Paralympic Games . . . ." *Id.* at § 220503(3) (emphasis added). Additional relevant statutory purposes include: "to obtain for the United States, directly or by delegation to the appropriate national governing body, the most competent amateur representation possible in each event of the . . . Paralympic Games[;]" "to promote and support amateur athletic activities involving the United States[;]" "to foster the development of and access to amateur athletic facilities for use by amateur athletes and assist in making existing amateur athletic facilities available for use by amateur athletes[;]" and, "to encourage and provide assistance to amateur athletic programs and competition for amateur athletes with disabilities, including, where feasible, the expansion of opportunities for meaningful participation by such amateur athletes in programs of athletic competition for able-bodied amateur athletes[.]" *Id.* at §§ 220503(4), (5), (9), (13).

It is of no moment that Plaintiff did not himself pay USOPC for his stay at the Training Center. *See Wycoff*, 251 P.3d at 1267. And besides, though the parties both referenced that Plaintiff's stay at the Training Center was based on the High

Performance Plan, they inadequately explain what that means. But as far as the Court can discern from its review of that plan (Dkt. 155-1), it simply means the costs associated with Plaintiff's stay at the Training Center were funded through a separate source. *See generally* Dk.t 155-1. USOPC concedes as much. Dkt. 151, p.3 ("[Plaintiff's] training at the [Training Center] was funded through a High Performance Plan."). Which all indicates USOPC received funds to cover Plaintiff's stay and training, just not directly from Plaintiff. From a commercial activity standpoint, the Court sees little material difference in whether the funds USOPC received for Plaintiff's stay came directly from Plaintiff or another source on his behalf. *See Wycoff*, 251 P.3d at 1267. The Court finds USOPC and Plaintiff transacted business of mutual interest based on USOPC's stated goals, missions, and business interests, and Plaintiff's status and goals as an elite level paralympic swimmer.

**3.    USOPC Provided Plaintiff Assurances of Safety**

As noted in this Court's previous Order Re: Defendant USOPC's Motion to Dismiss and to Strike (Dkt. 153), an express codified purpose of USOPC is "to promote a safe environment in sports that is free from abuse, including emotional, physical, and sexual abuse, of any amateur athlete." 36 U.S.C. § 220503(15);[2] *see also id.* at § 220503(16) (stating the additional purpose "to effectively oversee the national governing bodies with respect to compliance with and implementation of the policies

---

[2] As an amateur athlete, Plaintiff belongs to the class of persons this statute was designed to protect and the injuries he claims are the type the statute is designed to protect against.

and procedures of the [USOPC], including policies and procedures on the establishment of a safe environment in sports as described in paragraph (15).") The Court can think of no stronger explicit assurance of safety (for purposes of this premises liability analysis) than one codified through an act of Congress.

But beyond that, in USOPC's Policies & Rates brochure, its section titled "Athletes Safety" provides;

> The USOPC is committed to the safety and wellbeing of athletes and participants involved in the U.S. Olympic and Paralympic movement. As part of this commitment, the USOPC's policy, prevention, and education efforts aim to create an environment free of emotional, physical and sexual misconduct and abuse, and to ensure effective and prompt action and resolution upon the occurrence of misconduct and/or abuse.

Dkt. 151-1, p.17. That same policy touts that "the USOPC requires individuals over the age of 18 who train, reside or work at an OPTC to undergo a background check and to be compliant with the U.S. Center for SafeSport's education and training requirements. Additionally, the USOPC has implemented safeguards specifically aimed at protecting minors as outlined below." *Id.* And the "USOPC Training Center Access Protocol" states: "At times, issues arise concerning who should have access to an OPTC. In this regard, the USOPC endeavors to: provide a safe environment for athletes and other individuals who reside, train or compete at OPTCs; [and] protect persons at risk, including minors and disabled persons[.]" *Id.* at p.23.

Based on USOPC's codified and extensive express policies regarding its commitment to athlete safety, it strains credulity to believe these assurances

somehow did not apply or were not given to Plaintiff, as USOPC would have this Court believe. *See, e.g., Wycoff*, 251 P.3d at 1268 ("Few youths would attend—and even fewer parents would allow and pay for their child's attendance at—an overnight event whose sponsor disclaimed any intent or ability to make the event reasonably safe."). These assurances were not only explicit and in writing, but they are indeed codified in the United States Code. USOPC's explicit assurances of safety further render Plaintiff an invitee. *Id.* And at minimum, the Court finds USOPC's invitation to Plaintiff to live and train at the Training Center carried implicit assurances of safety arising from its abundant written and statutory pronouncements of the safe environment it affords athletes living and training in its quarters.

*          *          *

For the reasons shared above, the Court finds, as a matter of law, that Plaintiff was an invitee of USOPC during his time living and training at the Training Center.


DATED:        October 28, 2024

BY THE COURT:

S. Kato Crews
United States District Judge